COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Clements and Senior Judge Coleman


GWENDOLYN SALES

                                    MEMORANDUM OPINION[*]
v.    Record No. 0250-03-4              PER CURIAM
                                      JULY 22, 2003
ALEXANDRIA DEPARTMENT OF
 SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Donald M. Haddock, Judge

            (Gwena Kay Tibbits; Law Offices of Gwena Kay
            Tibbits, on brief), for appellant.

            (Mary Elliott; Office of the City Attorney,
            on brief), for appellee.

            (Dorathea J. Peters; Peters & Mullins, on
            brief), Guardian ad litem for the children.


      Gwendolyn Sales (mother) appeals the decision of the trial

court terminating her residual parental rights in four of her

children, Malik, William, Cristal and Moisha (collectively, "the

children"). On appeal, mother contends the trial court erred by

finding (1) she, without good cause, had been unwilling or unable

to remedy substantially the conditions which led to the foster

care placement of the children; and (2) the termination of her

residual parental rights was in the best interests of the

_____

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

children. The Alexandria Department of Social Services (ADSS) raises one issue on appeal: whether it was appropriate for the trial court to consider evidence as of the date of the trial rather than evaluating the facts as of the date of the foster care review hearing in the juvenile and domestic relations district court (JDR court). Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to appellee as the party prevailing below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

In her opening brief, mother admits that she is a chronic drug abuser. The record indicates mother has a twenty-year history of drug abuse. In December 1999, ADSS became involved with the family after one of the children was born addicted to illegal substances. ADSS implemented services to assist mother with the goal of teaching her effective parental skills. ADSS also coordinated mother's enrollment in an outpatient drug treatment program. However, in April 2000, mother dropped out of the program and disappeared for months. ADSS and the guardian ad litem (GAL) for the children requested a show cause because mother

-

was not cooperating with ADSS and she was not involved in substance abuse treatment. In November 2000, mother vowed to cooperate and to reenter substance abuse treatment.

For about six months, mother complied with ADSS intensive services, and in February 2001 she was admitted into a drug clinic. Mother complied with the treatment until she had a relapse in May 2001. After May 2001, mother had sporadic contact with ADSS and she was discharged from the drug clinic due to testing positive for drug use, missing meetings, and non-compliance with the rules.

In August 2001, ADSS filed a petition alleging that the children were abused and/or neglected. The petition also requested that the JDR court order the removal of the children from mother's care and the placement of the children into foster care. ADSS made the requests based on mother's lack of cooperation with substance abuse treatment, her "drug environment lifestyle," her frequent absences from home, her provision of inadequate caretakers for the children, and her lack of cooperation with ADSS. In addition, some of the children had untreated medical and dental conditions. Several of the children were not enrolled in school, and one child was developmentally delayed.

In September 2001, the JDR court ordered the removal of the children from the home, finding that all of the children were

-

abused and neglected.  The court also ordered mother to either enter a residential drug treatment program or go to jail.  Mother entered a three-month residential drug treatment facility in September 2001.  While there, she maintained contact with her children, but she did not participate in her children's therapy sessions.  After completing the three-month program, the recommended treatment plan was for mother to enter a women's recovery facility.  However, mother returned home.

On May 23, 2002, ADSS presented the JDR court permanency plans for the children with the goal of return to parent on the conditions that mother remain sober and initiate parental skills training.  Mother maintained that she had been drug-free from September 7, 2001 until May 23, 2002.  The JDR court set the matter for a full hearing and requested evidence that mother was maintaining consistent sobriety.  After May 23, 2002, mother missed five substance abuse therapy sessions, she missed several drug screening tests, and she missed two court hearings.

Thereafter, in July 2002, ADSS changed the goal from return to parent to adoption, stating that it did not appear that mother would be able to reach a state of recovery and parental ability to meet her children's needs.  A risk assessment completed prior to mother's most recent relapse indicated the children were at "high risk," meaning that it was "not likely that timely permanency and/or child well-being will be achieved."  ADSS and numerous

-

drug-related services had worked intensively with mother for two and one-half years on her sobriety issues. ADSS also found that mother was "in denial" about the special needs of her children and the fact that her constant drug use had affected her children and resulted in their neglect.

On October 17, 2002, the JDR court approved the foster care plans with goal of adoption and terminated mother's parental rights to the four children. After the October 2002 termination hearing, ADSS informed mother that she could arrange for visitation with the children, but she never made the arrangements. On December 23, 2002, mother entered a social detoxification program, which consisted of daily group therapy meetings. Mother also appealed the decision of the JDR court to the circuit court.

At the time of the January 3, 2003 hearing in the trial court, mother had been "clean" for about thirty days. Tracy Underhill, a therapist and substance abuse worker for the City of Alexandria, testified that mother was in the early recovery stage of rehabilitation and would probably need several more years of substance abuse treatment. The GAL for the children joined ADSS in asking for the termination of mother's parental rights. The GAL stated that mother does not recognize that her addiction, lifestyle, and lack of parenting have caused problems with each of the children. The GAL also noted that although mother has had periods of sobriety, she has relapsed into drug use again. The

GAL opined that the termination of mother's parental rights would be in the best interests of the children. The GAL stated that mother "has a long way to go toward . . . learning what she needs to parent a child" and the GAL saw "no hope of it being done right now in the future."

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(B) and (C). The trial court found that mother had primarily been making efforts to deal only with her addiction problems and "without great success." Yet, mother had "virtually no focus on improving the parenting skills." The trial court found that mother "is just not capable of taking care of those children, and albeit the addiction may be the root cause of that, her efforts to cure the addiction have been unsuccessful and her efforts to increase substantially her parenting skills have been non-existent."

ANALYSIS

Termination

"Code § 16.1-283 embodies 'the statutory scheme for the termination of residual parental rights in this Commonwealth.'" Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citation omitted). Subsection (C)(2), one of the subsections under which the trial court terminated mother's parental rights in this case, requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2)

-

"reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite those services, the parent has failed, "without good cause," to remedy those conditions.  Clear and convincing evidence is "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'"  <u>Martin v. Pittsylvania County Dep't of Soc. Servs.</u>, 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986) (citation omitted).

Mother contends she made substantial progress to remedy the conditions which led to the foster care placement of the children and the trial court's finding that she had been unwilling or unable to remedy substantially the conditions which led to their foster care placement was plainly wrong and without evidence to support it.   However, the evidence, viewed in the light most favorable to ADSS, established that ADSS made "reasonable and appropriate efforts" to help mother remedy the conditions which both "led to" and "required continuation of" the children's foster care placement.  Code § 16.1-283(C)(2).  Nonetheless, mother failed to make reasonable progress toward eliminating the conditions which led to the placement.

Mother has been a chronic drug abuser for over twenty years. For more than two years, ADSS and other services made repeated

-

efforts to assist mother in substance abuse rehabilitation and to assist the children with counseling and other lifestyle matters. However, mother continued to have relapses and she cooperated with the service agencies only sporadically. Mother also lied about her continuing violent relationship with a man despite a protective order prohibiting contact between the children and the man. The evidence showed that this man had encouraged one of mother's children to steal.

Mother's drug use and chosen lifestyle greatly affected the lives of her children. In addition, because she has failed to remedy her addiction problems, mother has not addressed issues relating to her parenting skills and she has not sufficiently attended to the children's needs, such as enrolling them in school, providing adequate supervision, and providing appropriate medical treatment. Although a parent's limitations are factors for the court to consider, they do not necessarily constitute good cause for failing to remedy the conditions leading to foster care placement. See Lecky, 20 Va. App. at 312, 456 S.E.2d at 541.

Furthermore, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (citation omitted).

-

> In determining what is in the best
> interests of the child, a court must
> evaluate and consider many factors,
> including the age and physical and mental
> condition of the child or children; the age
> and physical and mental condition of the
> parents; the relationship existing between
> each parent and each child; the needs of the
> child or children; the role which each
> parent has played, and will play in the
> future, in the upbringing and care of the
> child or children; and such other factors as
> are necessary in determining the best
> interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

All four of the children have significant needs, including physical, emotional, academic and medical necessities.  Two of the children have been placed in therapeutic foster homes because of their extensive special needs.  Mother has not provided a stable environment for the children, and she has been unable to address her lack of parenting skills because of her addiction.  "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citation omitted).  The record supports the trial court's finding that ADSS presented clear and convincing evidence satisfying the statutory requirements of Code

-

§ 16.1-283 and establishing that termination of mother's parental rights is in the children's best interests.

## Consideration of Evidence

The trial court properly considered evidence of the family's circumstances between the time of the May 2002 hearing in JDR court and the date of the trial. An appeal from the juvenile court must be heard de novo by the circuit court. Code § 16.1-136. "'A de novo hearing means a trial anew, with the burden of proof remaining upon the party with whom it rested in the juvenile court.'" Parish v. Spaulding, 20 Va. App. 130, 132, 455 S.E.2d 728, 729 (1995) (citation omitted). "[A]t a trial de novo in the circuit court, the parties are not restricted to the evidence presented before the juvenile court. The circuit court must consider all relevant evidence, even if such evidence had not been considered by the juvenile court." Fairfax County Dep't of Family Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999). "A trial court is required to consider any relevant evidence developed prior to the hearing date that may impact on the child's best interests." Parish, 20 Va. App. at 132-33, 455 S.E.2d at 729.

Accordingly, we summarily affirm the decision of the trial court.

Affirmed.

-